## DYSART v. MISSOURI, K. & T. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. April 20, 1903.)

No. 1,750.

**1. PRINCIPAL AND AGENT—APPARENT AUTHORITY OF AGENT SOMETIMES EQUIV-ALENT TO ACTUAL AUTHORITY.**

A principal is bound to third persons, who act without notice or rea-sonable cause to believe that there is a defect of power, by the appar-ent authority with which he clothes the agent, within the scope of his agency, to the same extent as by the actual authority he confers upon him.

**2. CARRIERS—APPARENT AUTHORITY TO TRAINMASTER TO TAKE PASSENGER ON FREIGHT TRAIN.**

A trainmaster, who had no authority to permit passengers to ride upon freight trains without the order of the superintendent, but whose duty it was to issue orders to that effect to conductors when directed to do so by the superintendent, and whose orders the conductors were required to obey without question, issued an order to a conductor with-out authority from the superintendent to carry a physician on his freight train, and the conductor did so. Neither the conductor nor the doctor knew, or had reasonable cause to believe, that the trainmaster had vio-lated his duty and issued the order without authority from the super-intendent. *Held,* the act of the trainmaster was within the scope of his agency. He had authority to perform it under some circumstances. His master had clothed him with apparent authority to issue the order, and as against the conductor and the doctor, who had no notice or cause to believe that there was any defect in his authority, the apparent au-thority was as binding upon the railway company as actual authority would have been.

**3. SAME—PRESUMPTION—PASSENGERS ON FREIGHT TRAINS.**

In the absence of any rule or practice permitting freight trains to carry passengers, the presumption is that conductors have no authority to authorize them to ride thereon, and that one riding for his own con-venience on a freight train, an engine, a hand car, or any other car-riage of a common carrier that is evidently not designed for the transpor-tation of passengers, is unlawfully there, and is a trespasser. Purple v. Union Pac. Ry. Co., 51 C. C. A. 564, 114 Fed. 123, 132, 57 L. R. A. 700. But this presumption may be overcome by proof of an order to the conductor, from the superior officer from whom conductors customarily receive such orders, directing him to carry the person on his freight train.

**4. APPEAL AND ERROR—REVIEW—ERRORS OF COURT BELOW ALONE CONSIDERED.**

In an ation at law the United States Circuit Court of Appeals is a court for the correction of the errors of the court below only. Where there was a fatal error at the trial, the appellate court will not ordinarily dis-cuss and determine other questions of law, which were not considered or ruled by the court below.

(Syllabus by the Court.)

¶ 1. See Principal and Agent, vol. 40, Cent. Dig. § 254.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Thomas H. Bacon (James H. Whitecotton, on the brief), for plaintiff in error.

George P. B. Jackson (George A. Mahan, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an action by an alleged passenger upon a freight train for damages caused by negligence in its operation. A judgment was rendered in favor of the railway company upon a directed verdict, on the ground that the trainmaster of the defendant, who ordered the conductor to carry the plaintiff upon his freight train, was without authority to do so. This question arose upon the trial, when the plaintiff's evidence to show authority was rejected. The plaintiff was a physician at Paris, a station on the railroad of the defendant in the state of Missouri, and he wished to ride to Higbee, another station on the defendant's railroad, for the purpose of rendering professional services to a child in a case which demanded immediate attention. The next train from Paris to Higbee, after he received his call, was a through freight train which did not stop at Paris, and the doctor knew this fact, and he also knew that neither the conductor nor the station agent had authority to permit passengers to ride upon that train, and that some higher official of the defendant had this power; but he did not know which officer possessed it. In this state of the case he applied to the station agent to procure permission for him to ride upon the coming freight train. The officers above the station agent and the conductor, in their order of rank, were the trainmaster, the general superintendent, and the vice president and general manager. The trainmaster had authority to stop and to move trains, but he had no power to permit a passenger to be carried upon a freight train. This authority was vested in his immediate superior, the general superintendent. The station master was aware of this fact, but he did not apply to the general superintendent, because it was a rule and a practice of the railway company that the station master and the conductor should seek such permissions through their immediate superior, the trainmaster, and that the conductor should obey the latter's orders. The general superintendent communicated his orders through the trainmaster. The station master accordingly applied to the trainmaster by telegraph for permission for the plaintiff to ride upon the through freight train from Paris to Higbee. The trainmaster failed to apply to the general superintendent to grant this request, and never had any authority to do so.

After these facts had been established the court made the ruling which is challenged, and which was fatal to the plaintiff's case. It rejected evidence of the following facts: The trainmaster, Davis, without authority so to do, informed the station agent that the request of the doctor to ride upon the freight train was granted, and issued an order to the conductor of that train to stop it at Paris,

and to carry the plaintiff upon it from Paris to Higbee. The station agent notified the doctor that he had received permission for him to ride upon the train. The conductor stopped the train at Paris, and took the doctor upon it, in obedience to the order of the trainmaster. The Circuit Court held that this evidence was immaterial, and rejected it, because it did not tend, in its opinion, to show any authority on the part of the trainmaster to empower the conductor to accept the plaintiff as a passenger. But can the railway company, which placed this trainmaster where it was his duty to determine whether or not he had authority to grant this permission, and to act upon that determination, and which required the conductor of this train to immediately obey his order, be heard, after the event, to say to him, or to those who acted in reliance upon the order of the trainmaster to him, and who had no notice or suspicion that this order was unauthorized, that it was beyond the power of the trainmaster, and that all acts and contracts based upon it are void? Let us see. The plaintiff knew that neither the conductor nor the station master had authority, without an order from some superior officer, to accept him as a passenger; but he did not know what officer had this power. The railway company placed the trainmaster in command of the conductor, and required the latter to obey his orders. It did not impose upon the conductor the duty of investigating the source from which the trainmaster derived his authority before he obeyed his orders, but it required of him prompt and implicit obedience in every instance. The general superintendent had authority to grant permissions to passengers to ride upon freight trains. When he granted them, he communicated them to the conductors through the trainmaster, who issued the proper orders. It was therefore the duty of the trainmaster to ascertain and determine in each case whether or not the general superintendent had granted him permission to allow a passenger to ride upon a freight train, and it was his duty to issue or to refuse to issue an order to the proper conductor permitting him to ride, in accordance with the authority or lack of authority which he had received from the general superintendent. In the case at bar he issued an order to this conductor to carry the plaintiff upon his freight train. If he had faithfully discharged the duty imposed upon him by the company, there would have been an order from the superintendent, back of the order of the trainmaster, authorizing the latter to issue his order. When the conductor received that order, the legal presumption was that the trainmaster had discharged his duty, that there was an order of the superintendent back of it, and both the conductor and the plaintiff had the right to rely upon that presumption, and to make the contract of carriage in accordance with it.

Nor is it material now, after the plaintiff and the conductor have acted upon the apparent authority of the trainmaster, that his actual authority was not as great as it seemed to be. For a master is as conclusively bound to innocent third persons by the acts of the agent, in the exercise of the apparent authority with which the master has clothed him, within the scope of his agency, as he is by the actual authority which he confers upon him. Chicago, St. Paul, Minne-

apolis & Omaha Ry. Co. v. Bryant, 13 C. C. A. 249, 253, 65 Fed. 969, 973; Mechem on Agency, § 283; Austrian & Co. v. Springer, 94 Mich. 343, 349, 54 N. W. 50, 34 Am. St. Rep. 350; Foster v. Ry. Co. (C. C.) 56 Fed. 434, 436; Butler v. Maples, 9 Wall. 766, 19 L. Ed. 822; Inglish v. Ayer, 79 Mich. 516, 44 N. W. 942. The issue of this order by the trainmaster was within the scope of his agency, because he was the officer empowered to issue such orders to the conductors, when they were authorized by the superintendent, and it was his duty to know whether or not they were so authorized, and to act accordingly.

The question which this case presents is fairly answered by the propositions announced by the Supreme Court in Merchants' Bank v. State Bank, 77 U. S. 604, 644, 19 L. Ed. 1008, and by this court in Purple v. Union Pac. Ry. Co., 114 Fed. 123, 129, 51 C. C. A. 564, 570. In the former case the Supreme Court said:

"Where a party deals with a corporation in good faith, the transaction is not ultra vires, and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists. If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them."

In the latter case this court declared:

"One who enters and rides upon a car or train which he knows, or by the exercise of reasonable diligence would know, is prohibited from carrying passengers, is a trespasser, and not a passenger, and the only duty of the railroad company toward him is to abstain from wanton or reckless injury to him."

In the case under consideration the plaintiff knew that the conductor had no authority, without an order from some superior officer, to carry him upon the freight train. But, when he learned that the conductor had an order from such an officer to stop his train and to transport him upon it, he did not know, nor would he by the exercise of reasonable diligence have known, that there was any defect of authority, or any other irregularity in the issue of this order, on the part of those acting for the corporation; and there was nothing to excite his suspicion of any lack of authority on the part of the conductor, or of the officer from whom the conductor received the order, which he was implicitly obeying. The rejected testimony disclosed acts of the trainmaster and of the conductor, within the scopes of their agencies, in the exercise of the apparent authority with which the company had clothed them, and they were as binding upon the railway company as they would have been if their apparent authority had been actual authority. The evidence should have been received.

Counsel for the defendant in error argue at great length that, although the court erroneously rejected the testimony of authority to make the contract, yet the judgment below was right, and it should be affirmed, because, as they say, the contract proved by the plaintiff subjected the railway company to no liability for negligence, and there was no proof that the company was careless. They insist that the plaintiff produced at the trial below all the evidence which he

had upon these issues, and that, because this evidence was insufficient to establish liability, the judgment should be affirmed. There are two answers to this contention. In the first place, it does not appear that the plaintiff did produce at the trial below all the evidence which he would have produced, if the court had not erroneously ruled that he had shown no authority to make the contract upon which he relied; and he must be given an opportunity to produce all his evidence, and to try these issues, in view of the rule of law which governs the authority of the trainmaster. In the second place, this is a court for the correction of the errors of the court below only. That court did not consider, try, or rule upon the issues relating to the character of the contract and the negligence, and therefore there is nothing in its action regarding these issues for this court to consider or determine, and the discussion and decision of them here must be deferred until there has been an opportunity to try and a trial of them in the court below. That court rejected the evidence of the action and of the apparent authority of the trainmaster and conductor, and then directed a verdict for the railway company, because there was no evidence that these officers had authority to make the contract of carriage upon the freight train upon which the plaintiff relied. This was the ruling which determined the case. It was erroneous, and the judgment below must be reversed, and the case must be remanded to the Circuit Court for a new trial.

It is so ordered.