## In re S. P. SMITH LUMBER CO.

### In re McNATT.

(District Court, N. D. Texas. September 22, 1904.)

#### No. 318.

**1. GUARANTY—CONSTRUCTION OF CONTRACT.**

A contract executed by a builder and a lumber company on one part, which recites that they are joint contractors for the building of a house, and that in consideration of the profit on lumber which it expects to furnish for the work the company guaranties the completion of the contract, but which does not obligate the other parties to purchase lumber from it, is merely one of guaranty on the part of the company.

**2. CORPORATIONS—POWERS—CONTRACT OF GUARANTY.**

A corporation chartered for the purpose of buying and selling lumber and other building materials, has no power to bind itself as guarantor for the performance of a building contract by another, and such a contract is ultra vires and void, and affords no basis for a claim against its estate in bankruptcy by the owner of the building because of the contractor's default.

In Bankruptcy. In re claim of R. H. McNatt. On certificate from referee.

Capps & Cantey, for claimant.
Tarleton & Ayers, for trustee.

MEEK, District Judge. The facts, so far as necessary to be stated, are given in the opinion. Claimant, R. H. McNatt, contends the bankrupt company became a joint contractor with one Brown for the construction and erection of claimant's house. The eighteenth paragraph of the contract, which is the basis of the contention as well as for the claim presented against the estate of the bankrupt, provides in terms that the S. P. Smith Lumber Company becomes a joint contractor with Brown for the construction and erection of the building. But the paragraph then provides and proceeds to define the duties and burdens of the bankrupt under the contract. It is clear these are to attach only in event Brown for any reason fails or refuses to perform his part of the contract, which is to construct and erect the building. The entire contract, aside from the eighteenth paragraph, is drawn on the theory that Brown is the sole contractor. He is to supply all material and labor and to construct and erect the building according to the plans and specifications provided. For this he is to receive the entire consideration. There is no consideration moving to the bankrupt by the terms of the contract in view of which it could be held to have engaged itself for the building of the house as joint contractor with Brown. The sole inducement for the bankrupt signing the contract in any capacity is found in the following recitation: "Whereas, the

S. P. Smith Lumber Company, a corporation, is proposing to furnish lumber for the erection of said building out of which it is supposed to make a profit, it is hereby agreed on its part that it becomes," etc. This recitation neither binds the owner of the building, McNatt, nor the contractor, Brown, to purchase from the bankrupt any of the lumber for the building. While this language cannot be construed as a valid consideration for the making of the contract on the part of the bankrupt, it is an appropriate recitation, and throws light upon the intentions of the parties. It is the inducement for its undertaking "to complete the job according to the plans and specifications and this contract" in event Brown for any reason failed or refused to do it. In consideration of its contemplated profit on sales of lumber "it guaranties the full and perfect completion of the contract according to said plans and specifications." By these provisions the bankrupt seeks to bind itself to McNatt for the due fulfillment of the undertaking and engagement of Brown. This is a contract of guaranty. 2 Parsons on Contracts (8th Ed.) p. 3; Pingrey on Suretyship and Guaranty, § 339; Atwood v. Lester, 20 R. I. 660, 40 Atl. 866; Gridley v. Capen, 72 Ill. 13. In event this guaranty had been given by a natural person, it would have been valid and binding, as the contract between McNatt and Brown for the erection of the building was founded on a good consideration, the guaranty was executed concurrently as a part of the same instrument, and is recited to be the consideration moving McNatt to let the contract for the erection of the building to Brown. Under the authorities the consideration for the erection of the building would be regarded a consideration also for the guaranty. 2 Parsons on Contracts (8th Ed.) p. 7; Campbell v. Knapp, 15 Pa. 27; Klein v. Currick, 14 Ill. 237; Bickford v. Gibbs, 8 Cush. 156. Was the bankrupt, under its charter, authorized to become guarantor of Brown in his undertaking as a building contractor? It was incorporated for the purpose of buying and selling at wholesale and retail lumber and all other manufactured building material. The power to become a guarantor was not expressly conferred upon it by its charter. Can it be implied therefrom? A purpose of its creation was to sell lumber. Becoming guarantor for Brown furthered this end. It secured for it the sale of the lumber to be used in the construction of the McNatt house. But the power to sell lumber and to enter into all contractual arrangements in the line of the accomplishment of such sales and incident thereto cannot be held to include the power to become guarantor of the undertaking of another in an entirely different line. In thus acting it risks the funds of the company in a different enterprise and business under the control of another, contrary to what its stockholders, its creditors, and the state have the right from its charter to expect. Mor. Priv. Corp. § 423; Humboldt Min. Co. v. Am. M. M. & M. Co., 62 Fed. 356, 10 C. C. A. 415; Clark & Marshall on Corp. § 184; Davis v. Old Colony R. R. Co., 131 Mass. 258, 41 Am. Rep. 221; Best Brewing Co. of Chic. v. Klassen (Ill.) 57 N. E. 20, 50 L. R. A. 765, 76 Am. St. Rep. 26. In becoming a guarantor for Brown it acted in excess of its charter power, not only in view of the common law, but also in view of the express statutory law of the state of Texas. Rev. St. 1895, art. 665.

In McCormick v. Market Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817, Mr. Justice Gray in the course of his opinion says:

"The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate power is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: the obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interest of its stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law."

—Citing Pearce v. Madison & Indianapolis R. R., 21 How. 441, 16 L. Ed. 184; Pittsburg, etc., Railway v. Keokuk & Hamilton Bridge Co., 131 U. S. 371, 9 Sup. Ct. 770, 33 L. Ed. 157; Central Transp. Co. v. Pullman's Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55.

In the course of his opinion in California Nat. Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198, Mr. Justice White, speaking for the court, says:

"A contract of a corporation, which is ultra vires in the proper sense—that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature—is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

—Citing and quoting from Central Transp. Co. v. Pullman's Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55.

Upon the bankruptcy of the lumber company the contractor ceased work, and failed to fulfill his contract. The owner, under its provisions, continued the work, and completed the building at an advanced cost to him, above the contract price, of the amount of his claim here. He seeks to participate in the distribution of the bankruptcy estate pro rata to the extent of such claim with the contract of guaranty as the basis therefor. Any dividend paid him would virtually be a recovery on the contract to that extent. Having enjoyed the probable profits arising from the sale of the lumber as a result of giving the guaranty, would the bankrupt company have been, and is the trustee of the estate now, estopped to deny liability under the guaranty notwithstanding the act of giving it was ultra vires? The bankrupt did not receive and appropriate valuable property under this contract payment for which the trustee is seeking to avoid by invoking the doctrine of ultra vires. It simply procured for itself the sale of lumber. It sold lumber to the contractor, and received value for it. All that it was presumed to make under the contract was a profit on the lumber sold. Therefore there is not present that element which appeals so strongly to the chancellor, and which seems to have carried the courts of last resort of some of the states so far in the application of the doctrine of estoppel as it relates to ultra vires acts of corporations. Claimant let the contract for the building of his house to Brown on the strength of the bankrupt's guaranty, and he has suffered loss thereby. But he was bound to take notice of the company's legal limitations, of its lack of authority to make valid contracts of guaranty.

In Humboldt Min. Co. v. American Man. M. & M. Co., cited supra, a case largely analogous to the present one, Judge Taft, in delivering the opinion of the court, says:

"It is said, however, that the contract has been performed on behalf of the plaintiff, and therefore that the defendant is estopped to deny its power to make it. We do not think that any such principle has application here. Strictly speaking, a corporation is never estopped to deny its power to make a contract where the extent of its powers and of the facts relevant thereto were or should have been known to the parties seeking to enforce the contract when it was entered into. In cases where property has been received or money paid to the corporation seeking to avoid the obligations of an ultra vires contract, the person delivering the property or paying the money has the remedy of recovering back that which was given to the corporation on the faith of the ultra vires contract. This, however, as has been said several times by the Supreme Court of the United States, is not a recovery on the contract, but is, in effect, an avoiding of the contract and a restoration of the parties to their status quo ante. St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co., 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748; Central Transp. Co. v. Pullman's Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55. In this case no money or property was paid by the plaintiff to the guarantor defendant, and there is no way by which the parties can be restored to their condition before the contract was entered into and performed. However this may be, the suit here is upon the contract, and, as the contract is void, it gives the plaintiff no right of action against the corporation."

For the foregoing reasons I am of the opinion the contract of guaranty could not have been enforced against the bankrupt company, and cannot be against the estate of the bankrupt. The order entered by the referee disallowing McNatt's claim is approved and confirmed, and the costs of this certificate will be taxed against claimant.