JENSON v. TOLTEC RANCH CO. et al.

(Circuit Court of Appeals, Eighth Circuit.   October 28, 1909.)

No. 3,020.

1. CORPORATIONS (§ 399*)—PRINCIPAL AND AGENT—PRINCIPAL BOUND BY APPARENT AUTHORITY WITH WHICH IT CLOTHES ITS OFFICER OR AGENT.

A corporation, like an individual, is bound to innocent third persons by the apparent authority with which it clothes its officer within the scope of his authority and within the powers of the corporation to the same extent as by the actual power it confers upon him.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1588, 1602–1610; Dec. Dig. § 399.*]

2. CORPORATIONS (§ 425*) — CORPORATION BOUND BY LONG ACQUIESCENCE IN LIKE ACTS OF OFFICERS OR AGENTS.

Where, without challenge by the other officers or by the stockholders of the corporation, an officer has exercised a power within the general scope of his actual authority and within the powers of the corporation to do certain acts in its name and on its behalf for such a length of time as to justify others in believing that his acts and management were within his lawful powers and approved by the corporation, the stockholders and the corporation are alike estopped from denying, to the prejudice or injury of parties who have acted in reliance upon his apparent authority, that he had actual authority to do similar acts in its behalf.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1700; Dec. Dig. § 425.*]

3. CORPORATIONS (§ 425*)—PRINCIPAL AND AGENT—ESTOPPEL TO DENY OFFICER'S AUTHORITY.

An officer of a corporation, who was empowered to sell and convey its land without the signature of any other officer, in its name bought and sold land, borrowed money, and secured its repayment by the pledge of its personal property and a land contract, and conducted all the business of the corporation for six years without protest or objection. He then borrowed money of a bank and secured its repayment by the conveyance of some of the land of the corporation.

*Held*, the corporation and its officers and stockholders were estopped from denying that he had authority so to do.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1700; Dec. Dig. § 425.*]

4. CORPORATIONS (§ 487*)—ULTRA VIRES—CONSIDERATION OF CONTRACT, A PART WITHIN AND A PART WITHOUT POWERS OF PROMISOR, NOT FATAL TO ITS ENFORCEMENT.

It is no defense to an action upon a contract executed by the promisee that a divisible part of its consideration was without the powers of the promisor corporation, if the other part was valuable, legal, and within them; for the promisee may waive the part without the powers of the promisor and recover upon the consideration within its powers.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 487.*]

5. CORPORATIONS (§ 487*)—CONTRACT TO REPAY MONEY EXPENDED FOR CORPORATION FOR ULTRA VIRES PURPOSE—LENDER'S KNOWLEDGE OF PURPOSE NO DEFENSE.

It is no defense to a suit to enforce a contract performed by the promisee to repay money loaned to or paid for a corporation, and it is no defense to a mortgage to secure such repayment that the lender or payor knew that the borrower intended to use, or was using, the money thus paid for an illegal purpose, or for a purpose beyond its corporate powers, provided

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the promisee did not combine to induce, and did not share in the benefits of, such use.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 487.*]

6. CORPORATIONS (§ 446*)—CONVEYANCES ULTRA VIRES AVOIDABLE IN EQUITY ONLY ON CONDITION PROPERTY RECEIVED OR ITS VALUE IS RESTORED.

Equity restores to corporations property with which they have parted by means of conveyances or contracts beyond their powers only on condition that they first restore the property, or the value of the property, which they have secured thereby, pursuant to the rule that "he who seeks equity must do equity."

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 446.*]

7. CORPORATIONS (§ 440*)—CONTRACTS—ULTRA VIRES—FACTS—CONCLUSION.

The T. Co., a corporation empowered to buy, sell, convey, mortgage, and deal in land and other property bought, without corporate authority so to do, stock of the P. Co., a corporation empowered to construct and operate an electrical plant and waterworks, and agreed to pay $18,750 therefor. The two corporations requested the bank to guarantee a proposed contract of the P. Co. for pipe to the amount of about $9,700, and to pay the checks of the P. Co. upon it for the expenses of improvements it was about to make to an amount not exceeding $18,750, in consideration that the T. Co. would convey to a trustee certain of its land and would pledge the stock it had bought to secure the repayment to the bank of the money so advanced. The bank granted the request, the T. Co. conveyed the land to a trustee and pledged the stock to secure the repayment of the money to be advanced, the bank paid out $16,386.30 on the checks of the P. Co. in reliance upon this security, and then sued the T. Co. to foreclose the mortgage upon the land.

Held: (1) The contract of loan and the conveyance of the land by the T. Co. to secure the repayment of the money advanced by the bank were within the powers of that corporation and enforceable.

(2) Conceding that its purchase of the stock of the P. Co. was beyond its corporate authority, and that the bank knew it, those facts were not fatal to the contract of loan or to the mortgage.

(3) The fact that the indemnity for the guaranty of the contract of the power company with the pipe company was a part of the consideration of the loan contract was not fatal to a recovery by the bank thereon, because the loan of the money was a valid consideration for that contract, the agreement to repay it was within the corporate power of the T. Co., and the promisee might waive its contract of indemnity and rely upon the valid consideration.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 440.*]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Utah.

Bill by Joseph M. Jenson against the Toltec Ranch Company and the Box Elder Power & Light Company. Decree for defendants, and complainant appeals. Reversed and remanded, with directions.

The Toltec Ranch Company was a corporation of the state of California, empowered to buy, sell, mortgage, and deal in land, live stock, and general merchandise. Its home office was in San Francisco; but all its property was situated and all its business was conducted in the state of Utah by D. P. Tarpey, who was its president, general manager, and treasurer, who was authorized to buy, sell, and convey land for it, and who, from 1896, when it was organized, had conducted all its business under five directors, who held one share of stock each, and who acquiesced in all that he did. Its capital stock consisted of 1,000 shares, of which M. F. Tarpey of San Francisco, a brother of its president, held 995 shares as trustee to secure the repayment to him of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a debt of about $57,000. Joseph M. Jenson, the complainant, was one of the owners of a private bank called the Bank of Brigham City, and acted as its president. The Toltec Company had an account with that bank, in which it had deposited funds and against which it had drawn checks that were honored for more than six years. It had borrowed money of that bank about 50 times, and had given its notes, a land contract, and notes of third persons to it as security for the repayment of the money it borrowed at various times. The Box Elder Power & Light Company was a corporation authorized to buy and lease land, and to buy, sell, operate, and deal in machinery and appliances to generate and distribute light and power. It was anxious to construct a new pipe line, an electric plant, and other improvements for the purpose of furnishing power and light to Brigham City, and to that end it had negotiated a contract of purchase of pipe and other materials for about $9,735.08 from the Excelsior Wooden Pipe Company; but the latter company had refused to enter into the contract of sale until the Power Company's promise to pay the purchase price was guaranteed. The capital stock of the Power Company consisted of 1,000 shares, each of the par value of $100.

Thereupon the Toltec Ranch Company and one Chase agreed with the Power Company that each of them would purchase of that company 298 of its shares, and that in consideration of the delivery of that stock to them they would pay to the Power Company $18,750, to be used by that corporation in the construction of its pipe line and electric plant, and Chase agreed with the Toltec Company to deliver his share of this stock to the Toltec Company and to authorize it to pledge it to secure the repayment of money it was to borrow. Chase performed his part of this contract, so that the Toltec Company acquired the control of 498 shares of the stock of the Power Company. The Toltec Company, Chase, and the Power Company then made this contract with the bank. The bank, at the request of the Toltec Company and the Power Company, agreed, in consideration of the conveyance by the Toltec Company to Jenson as trustee of certain lands, which are the subject of this suit, and of its pledge of the 498 shares of stock of the Power Company, to secure the repayment to it of the moneys to be advanced by it, to guarantee the payment by the Power Company of the purchase price of the pipe and materials to be bought by it of the Excelsior Company, and to pay its checks on account of this purchase price and on account of other expenses of constructing its pipe line and electric plant, to an amount not exceeding $18,750, and the Toltec Company agreed to convey the land and to pledge the stock to secure the repayment to the bank of the moneys it should expend, either on account of this guaranty or on account of the payment of the checks of the Power Company. In fulfillment of this agreement the Toltec Company conveyed the land and the 498 shares of stock to Jenson as trustee on June 25, 1903, the bank guaranteed the payment of the purchase price of the pipe and materials on July 3, 1903, and thereafter paid upon the checks of the Power Company $9,735.08 for the pipe, and other sums for other expenses of construction, so that the whole amount thus advanced by it was $16,386.30. On November 2, 1903, the bank had paid out $14,000 of this amount, and it then requested the Power Company to execute, and it did make, its promissory notes for that amount, and it paid interest thereon for about two years, but it has never paid more, and it now denies liability thereon.

The Toltec Company refused to repay to the bank any part of the $16,386.30, and Jenson, who had become the sole owner of the claim of the bank, brought suit against the Toltec Company and the Power Company, and prayed for a judgment against each of them and for the sale of the land to pay the debt. The Toltec Company denied all the material averments of the bill, and filed a cross-bill in which it alleged that the deed of the Toltec Company was beyond the powers of that corporation, because it was made to secure the payment of a guaranty of another's debt and to borrow money to pay the purchase price of the stock of another corporation, and it prayed that the complainant be required to reconvey the land to it, and that it might be absolved from all liability on account of its purchase of the stock of the Power Company. Issues were joined on the allegations of the bill and answer by all the parties to the suit, and upon the averments of the cross-bill by the Toltec Company; but the Power Company was not made a party to the cross-suit. Evidence was taken

which established the facts that have been recited in the earlier part of this statement, and upon the final hearing the court dismissed the bill, and entered a decree that the complainant should reconvey the land to the Toltec Company, because its conveyance to Jenson to secure the guaranty of the bank and to secure its payment of the checks of the Power Company was beyond the powers of the Toltec Company and dehors the authority of its president.

Cornelius A. Boyd (Charles C. Richards, on the brief), for appellant.

C. C. Dey (John A. Street, on the brief), for appellee Toltec Ranch Co.

Hiram E. Booth, E. O. Lee, and Carl A. Badger, for appellee Box Elder Power & Light Co.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). A corporation, like an individual, is bound to innocent third persons who act without reasonable cause to believe that a defect of power exists, by the apparent authority with which it clothes its agent within the scope of his general authority and within the powers of the corporation, to the same extent as by the actual power it confers upon him. Merchants' Bank v. State Bank, 77 U. S. 604, 644, 19 L. Ed. 1008; Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Bryant, 65 Fed. 969, 973, 13 C. C. A. 249, 253; Dysart v. Missouri, Kansas & Texas Ry. Co., 122 Fed. 228, 231, 58 C. C. A. 592, 595. Where, without challenge by the other officers or stockholders of a corporation, an officer has exercised the power, within the general scope of his actual authority and within the powers of the corporation to buy and sell property, to borrow money, and to secure its repayment by the pledge of a land contract and some of its personal property, to conduct all its business, and to do these things in its name and on its behalf for such a length of time as to justify others in believing that his acts and his management were within his powers and were approved by his corporation, its directors and stockholders, the corporation, its officers and stockholders, are alike estopped from denying, to the prejudice or injury of those who have acted in reliance upon his apparent authority, that he had actual authority to do acts of a similar nature on its behalf. Martin v. Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49; G. V. B. Mining Company v. First Nat. Bank, 95 Fed. 23, 30, 36 C. C. A. 633, 640.

For more than six years before the transaction at issue, D. P. Tarpey had managed all the business of the Toltec Company, had bought and sold real and personal property for it and in its name, had borrowed money many times, and had secured its repayment, sometimes by the pledge of personal property and once by the assignment of a land contract. No stockholder or officer of the company had ever objected to any of his acts, and the bankers of Brigham City had no notice that any of them were disapproved or unauthorized. The corporation was expressly empowered under its articles of incorporation to buy, to sell, to convey, and to mortgage its real estate and to hypothecate its personal property. Tarpey was its president, its general manager, and its treasurer, and he was expressly authorized to sell

and to convey its land without the signature upon its deeds of any other officer of the corporation. In this state of the case there is no escape from the conclusion that the Toltec Company and its stockholders are estopped from denying that he had full authority to borrow money for it and in its name, to secure the repayment of that money by a conveyance of its land, or by the pledge of its personal property, and to do any other act within the limits of the lawful powers of the corporation.

The Toltec Company, by Tarpey, requested the bank to guarantee the contract with the Pipe Company and to pay the checks of the Power Company to an amount not exceeding $18,750, and it agreed to and did conevy its land to Jenson, as trustee, in order to induce the bank to advance this money and to secure the repayment of it after it should be thus expended. The bank granted its request and paid out $16,386.30 thereon. The legal effect of this transaction was that the Toltec Company borrowed this amount from the bank and mortgaged its land to secure the payment of its debt. Why, then, should not the mortgaged land be applied to the payment of this obligation? Counsel answer, because the Toltec Company had no corporate power to purchase the stock of the Power Company, so that it never owed that company $18,750, and it had no corporate power to indemnify the bank for guarantying the obligation of the Power Company to pay the Excelsior Company for the pipe. In support of these propositions they cite decisions in suits to enforce contracts which were beyond the powers of the defendant corporations, such as Park Hotel Company v. Fourth Nat. Bank, 86 Fed. 742, 747, 30 C. C. A. 409; Humboldt. Mining Co. v. American Manufacturing Min. & Mill. Co., 62 Fed. 356, 361, 10 C. C. A. 415; Evans v. Johnson, 149 Fed. 978, 980, 79 C. C. A. 488; In re S. P. Smith Lumber Co. (D. C.) 132 Fed. 620, 621; De La Vergne Co. v. German Savings Inst., 175 U. S. 40, 59, 20 Sup. Ct. 20, 44 L. Ed. 65; Vandagrift v. Rich Hill Bank, 163 Fed. 823, 824, 90 C. C. A. 129; McCormick v. Market Bank, 165 U. S. 538, 550, 17 Sup. Ct. 433, 41 L. Ed. 817; Ward v. Joslin, 186 U. S. 142, 152, 22 Sup. Ct. 807, 46 L. Ed. 1093. But this is not a suit upon a contract beyond the powers of the defendant corporation. Conceding, without deciding, that the indemnity for the guaranty and the purchase of the stock were ultra vires the Toltec Company, how does that fact bar the bank from the application of this security to the payment of the money borrowed of it by the Toltec Company? This is not a suit to enforce the Toltec Company's agreement to purchase the stock of the Power Company, or its contract of indemnity for the guaranty. Neither of those contracts is the basis of, or is in any way material to, this suit. Neither the bank nor Jenson was a party to the contract for the purchase of the stock, and the contract of indemnity for the guaranty has been executed and is not material to the validity of the contract of loan, because the latter contract is supported by another valuable consideration which is within the powers of the Toltec Company. The payment of the checks of the Power Company at the request of the Toltec Company was ample consideration for the agreement to repay the money so advanced and for the conveyance

of the land to secure it; and a contract or obligation which is executed by the promisee, and is sustained by a legal and valuable consideration which the promisor had the power to give, may not be defeated because the promisor also agreed to give another consideration which it was beyond its corporate power to bestow. The promisee may waive the unauthorized consideration and rely upon that which was within the power of the corporation. Lincoln Sav. Bank & Safe Deposit Co. v. Allen, 82 Fed. 148, 152, 27 C. C. A. 87, 91; Navigation Co. v. Winsor, 20 Wall. 64, 70, 22 L. Ed. 315; Illinois Trust & Sav. Co. v. Arkansas City, 76 Fed. 271, 280, 22 C. C. A. 171, 180, 34 L. R. A. 518; Western Union Tel. Co. v. Burlington & S. W. Ry. Co. (C. C.) 11 Fed. 1, 4, and cases cited in the note on page 12.

The Toltec Company had undoubted power to borrow $16,386.30 of the bank and to mortgage its land to secure the repayment of this money. It exercised that power. It borrowed the money and conveyed the land to secure its repayment. The only purpose of this suit is to apply that land, the title to which was conveyed by the Toltec Company to Jenson, to the purpose for which it was deeded, to the payment of that debt. But the bankers knew, say counsel for the Toltec Company, that the money which that company was borrowing from it, and which it requested the bank to pay to the Power Company, would be applied by the Toltec Company and the Power Company to the payment of the former's unenforceable obligation to pay for the stock which it had not the corporate power to buy.

In Farmer v. Russell et al., 1 Bos. & Pul. 295, it was held that if A. is indebted to B. on a contract forbidden by law, and pays the money to C., for the use of B., a court will give judgment in favor of B., against C., for the money, although B. could not have recovered against A. In Armstrong v. Toler, 11 Wheat. 258, 273, 6 L. Ed. 468, goods of Armstrong, Toler, and others had been shipped from New Brunswick to the United States during the War of 1812, in violation of the law. They were seized by the government and delivered to the agents of the claimants on the stipulation of Toler to abide the event of the suit. Thereupon Toler delivered to Armstrong the latter's part of the goods, in consideration of his promise to pay Toler his proportion of any sum for which Toler might become liable if the goods were eventually condemned. They were condemned. Toler paid their appraised value, and sued Armstrong for his proportion of it. Armstrong defended on the ground that his promise arose out of, and was made to carry out, the illegal contract of purchase and importation; but Chief Justice Marshall said:

"The general proposition stated by Lord Mansfield, in Faikney v. Reynous, that if one person paid the debt of another, at his request, an action may be sustained to recover the money, although the original contract was unlawful, goes far in deciding the question now before the court. That the person who paid the money knew it was paid in discharge of a debt not recoverable at law has never been held to alter the case."

The purchase of the stock by the Toltec Company was not prohibited by either the moral or the civil law. It was merely unauthorized. The bank did not request or induce the Toltec Company to make that purchase, and it never derived any benefit from it. It did not request the

Toltec Company to borrow money of it to pay the checks of the Power Company for the construction of the electric plant and other improvements. On the other hand, the Toltec Company besought the bank to make the loan, and offered to convey, and did convey, its land to Jenson, as trustee, to induce the bank to advance this money and to secure its repayment. This contract was not beyond the powers of the Toltec Company. The considerations which induced it, the debt and the conveyance of the land to secure its performance by the Toltec Company on the one hand, and, on the other, the promise to advance and the subsequent payment of the money, were new considerations subsequent to and apart from the purchase of the stock; and the fact that the bank knew that the money was to be applied, and was applied, to the payment of its purchase price, constitutes no defense to this suit to enforce its agreement to pay its debt for money borrowed. It is no defense, to a suit to enforce a contract that has been performed by the promisee to repay money loaned to or paid for another and to foreclose a mortgage to secure that repayment, that the lender or the payor knew that the borrower intended to use, or was using, the money for an illegal purpose, or a purpose beyond its corporate powers, where the lender or payor did not combine or conspire with the borrower to induce such a use and did not share in the benefits thereof. Wald's Pollock on Contracts (3d Ed.) 485; Armstrong v. Toler, 11 Wheat. 258, 273, 6 L. Ed. 468; Armstrong v. American Exchange Bank, 133 U. S. 433, 469, 10 Sup. Ct. 450, 33 L. Ed. 747; Hanover Nat. Bank v. First National Bank, 109 Fed. 421, 48 C. C. A. 482; Kansas City Hydraulic Press Brick Co. v. National Surety Co. (C. C. A.) 167 Fed. 496, 501; Waterbury v. McKinnon, 146 Fed. 737, 77 C. C. A. 294, 296; Ingraham v. National Salt Co., 130 Fed. 676, 681, 65 C. C. A. 54, 59; Taylor v. Mining Company, 79 Cal. 285, 287, 21 Pac. 753; Illinois Trust & Sav. Bank v. Pacific Ry. Co., 117 Cal. 332, 49 Pac. 197, 201; Holman v. Johnson, 1 Cowp. 341; Faikney v. Reynous, 1 Burr. 2069; Pellecat v. Angell, 2 Crompt., Mees. & Ros., 311; Hodgson v. Temple, 5 Taunt. 181; Marion Trust Co. v. Crescent Loan & Investment Co., 27 Ind. App. 451, 61 N. E. 688, 691, 87 Am. St. Rep. 257; Wright v. Hughes, 119 Ind. 324, 21 N. E. 907, 909, 12 Am. St. Rep. 412; First National Bank v. Dovetail Body & Gear Co., 143 Ind. 550, 40 N. E. 810, 812, 52 Am. St. Rep. 435; Tracy v. Talmage, 14 N. Y. 162, 67 Am. Dec. 132; Thompson v. Lambert, 44 Iowa, 239, 245.

There are other considerations, upon which it is unnecessary to dwell, which would lead to the same practical result in the case in hand. If the loan contract had been, like the contract to purchase the stock of the Power Company, beyond the corporate powers of the Toltec Company, there would be no equity in the restoration to the Toltec Company of its land, or the restoration of the stock to the Power Company, before the moneys which these corporations procured of the bank upon these securities were repaid to it. Courts of equity do not restore money or property to corporations that have obtained them by means of contracts or conveyances beyond their powers, until those corporations first restore the money or property they have secured thereby, or its value. He who seeks equity from these courts must first do

equity. Logan County Bank v. Townsend, 139 U. S. 67, 72, 77, 78. 11 Sup. Ct. 496, 35 L. Ed. 107; Central Transportation Co. v. Pullman's Car Company, 139 U. S. 24, 60, 11 Sup. Ct. 478, 35 L. Ed. 55; Pullman's Car Company v. Transportation Company, 171 U. S. 138, 150, 151, 18 Sup. Ct. 808, 43 L. Ed. 108; Planters' Bank v. Union Bank, 16 Wall. 483, 21 L. Ed. 473; In re Hovey's Estate, 198 Pa. 385, 48 Atl. 311, 315; Dunlop v. Mercer, 156 Fed. 545, 553, 86 C. C. A. 435, 443.

The argument of counsel that the Toltec Company derived no benefit from the loan contract because, at its request, the proceeds of it were paid to the Power Company, and hence that it could not be required to return anything as a condition of the reconveyance of its property, has received careful consideration. But it is not convincing. The Toltec Company obtained, and it never returned, but pledged to the bank, the stock of the Power Company. Notwithstanding the invalidity of its purchase, it was liable to the Power Company to return that stock, or to pay, not its purchase price under the contract, but its value at the time of its conversion. It could not keep the stock without any liability. It kept it, and converted it to its own use by its pledge of it to the bank. While its contract of purchase was not enforceable, its possession of the stock and its conversion of it to its own use rendered it liable on the quantum meruit for the value of the stock at the time of its conversion, and this value, in the absence of other evidence, was its purchase price. Logan County Bank v. Townsend, 139 U. S. 67, 72, 77, 78, 11 Sup. Ct. 496, 35 L. Ed. 107. At the request of the Toltec Company the money which that company borrowed, $16,386.30, was applied to the payment of that liability, and under the rule and the authorities which have been cited above the Power Company cannot recover the stock until it repays to the Toltec Company this sum of money. It cannot, therefore, be held that the Toltec Company derived no benefit from this loan contract. It secured all the benefit that could be derived from it, and the fact that the stock may have become worthless since it caused this $16,386.30 to be paid on its liability is not material to this suit, because, if that payment had not been made, its liability to the Power Company would have been greater by that amount.

The conclusion of the whole matter is that the loan contract and the conveyance of the land to secure the repayment of the money were within the powers of the Toltec Company, and were enforceable, and that, if they had been ultra vires of that company, the bank fully performed its part of the contract, and the Toltec Company would not have been entitled to a reconveyance of its land until it had repaid the $16,386.30 and interest, which it received and applied to the payment of its liability to the Power Company. The evidence has convinced that the bank advanced its money at the request of both defendants, and that they are both indebted to it therefor, but that between the two defendants the Toltec Company is the principal debtor and the Power Company its surety.

The decree below must be reversed, and the case must be remanded to the Circuit Court, with directions to dismiss the cross-bill, to ascer-

tain the amount of the debt, and to enter a decree for the complainant for the relief prayed in his bill. It is so ordered.

NOTE.—The following is the opinion of Marshall, District Judge, in the court below:

MARSHALL, District Judge. The plaintiff seeks to have a deed executed in the name of the Toltec Ranch Company declared a mortgage to secure two certain promissory notes made by the defendant the Box Elder Power & Light Company, and a balance of an open account against that defendant, and for a foreclosure of the mortgage. The indebtedness, while in the name of the Box Elder Power & Light Company, is alleged to be the indebtedness of both of the defendants. The answer of the Toltec Ranch Company denies its liability for this indebtedness, and alleges a want of authority to enter into the transaction in the corporation, and also in its president, who executed the deed, and by cross-bill seeks to have a reconveyance of the property so deeded, and also to have declared void a subscription to one-half of the capital stock of the Box Elder Power & Light Company. No subpoena was sued out on this cross-bill; but it was served on the counsel for the plaintiff, and the plaintiff has answered. No service was had on its codefendant, and no answer interposed by that defendant. The Box Elder Power & Light Company answered the plaintiff's bill and admitted the execution of the notes, but alleged that the indebtedness was that of D. P. Tarpey, or of the Toltec Ranch Company, and that its notes were unauthorized, because given as security for the debt of another.

The facts, so far as necessary to a decision, are these: D. P. Tarpey, the president and general manager of the Toltec Ranch Company, in the name of that company, undertook to subscribe for one-half of the capital stock of the Box Elder Power & Light Company, and, in payment of this subscription, agreed to pay to the credit of that company into the Bank of Brigham City (a copartnership composed of the plaintiff, Jensen, and John Pingree), the sum of $18,500. The Box Elder Power & Light Company needed ready money, and also required a bond for the execution by it of a certain contract it had entered into. Tarpey and the officers of the Box Elder Power & Light Company entered into an arrangement with the Bank of Brigham City, by which the bank executed the bond and agreed to advance the needed money, and Tarpey, to secure it, in the name of the Toltec Ranch Company, executed the deed in question, and also pledged to it one-half of the capital stock of the Box Elder Power & Light Company so subscribed for. Throughout the transaction Tarpey acted in the name of, and under the claimed authority of, the Toltec Ranch Company. That company, by its articles of incorporation, was authorized "to carry on the business of buying, owning, holding, leasing, hiring, contracting for, selling, mortgaging, hypothecating, trading, trafficking, managing, and generally dealing in land and live stock; also for the purpose of carrying on a general merchandise and mining business in the United States of America, the republic of Mexico and the Dominion of Canada." By resolution of the board of directors of the Toltec Ranch Company, D. P. Tarpey was authorized "to sell or contract to sell any and all such parts of the real estate of the said company and any and all water rights of the said company to whomsoever he may see fit, on such terms and conditions and for such prices as he may deem advisable, and execute, in the name of the company, deeds or contracts for deeds conveying the land or lands and water to such parties as may be necessary, and he is further empowered to affix the name and corporate seal of said company to all such instruments"; and this appears to have been the only express authority vested in him, and was the resolution recited in the deed to the plaintiff as authority for its execution.

D. P. Tarpey's relations to the Toltec Ranch Company were somewhat indefinite. He came to Utah from California with money furnished by his brother, M. F. Tarpey, for the purpose of dealing in railroad land. The inference seems justified that at that time the interest of M. F. Tarpey was that of a creditor, and the entire profits of the enterprise were understood to belong to D. P. Tarpey. After some years of such dealing, and after M. F. Tarpey had advanced a large sum of money, and profit had not resulted, the Tol-

tec Ranch Company was formed to take over the business. About one-quarter of its stock was then issued to M. F. Tarpey, trustee, and one share was issued to each director, including D. P. Tarpey. The remainder of the shares were held in the treasury of the company. The stock held by M. F. Tarpey, trustee, was to secure him for his advances. Some time thereafter, but prior to the transaction in question, there was an accounting between M. F. Tarpey and the company, at which it was determined that the corporation owed M. F. Tarpey $57,500, and all of the treasury stock was then issued to him as trustee. It is fairly to be inferred that all of this stock was held by him to secure the repayment of his advances. There seems to have been no definite agreement as to the ownership of the stock after the payment of the indebtedness of the company; but, in view of the prior transactions between the brothers. it is probable that any net profits were tacitly understood to belong to D. P. Tarpey. After a certain period in the history of the company M. F. Tarpey became distrustful of the business capacity of his brother, and intended that the ultimate profits of the speculation should be given to D. P. Tarpey's wife and children; but there is no evidence that D. P. Tarpey ever assented to this, and it is not important here.

The argument is made that D. P. Tarpey was in fact the Toltec Ranch Company and could embark it in any business that he wished. This cannot be conceded. The state chartering a corporation has an interest that such corporation be restricted to the business it is authorized to transact, and the creditors of the corporation have an especial interest in such restriction. M. F. Tarpey was the only substantial shareholder, and, even if the shares held by him were for his protection as a creditor, it was necessary for that protection that the company should not be permitted to embark in any speculation foreign to the business it was authorized to transact. It is next contended that the Toltec Ranch Company is estopped to plead ultra vires because it had held D. P. Tarpey out as an unlimited agent. There is no evidence that any officer or agent of the company, other than D. P. Tarpey, ever had any notice of the particular transaction until after its completion and shortly before its repudiation to the plaintiff's knowledge, or that the company ever received any benefit from it. There is, likewise, no evidence that any such officer or agent ever had any notice of any similar transaction on the part of D. P. Tarpey, or of any attempt by him to transact business in the name of the company which was beyond its corporate powers. So that there is nothing in the record on which to predicate the plaintiff's contention. Beyond this, the want of power inhered in the corporation. It is not a case of the failure to observe some formality in the doing of an act the corporation was competent to perform. The attempt here was to do something that the corporation could not do in any form, and was, therefore, ultra vires in its strict sense, and could not be ratified. All of the facts were known to the plaintiff at the time of the execution of the deed, except, perhaps, the exact corporate powers of the Toltec Ranch Company; and of those powers he was required to take notice when he undertook to transact business with that company.

It follows that the case of the plaintiff against the Toltec Ranch Company wholly fails, and that the defendant is entitled to a decree on its cross-bill for a reconveyance. No relief can be granted to the Toltec Ranch Company against the Box Elder Power & Light Company in respect to the subscription for shares, because no service of the cross-bill was had on that company, nor has it voluntarily appeared to it. No relief can be given the plaintiff on the notes of the Box Elder Power & Light Company, because the equity of the plaintiff's bill has wholly failed, and its remedy on the notes is at law. The principle is stated in Dowell v. Mitchell, 105 U. S. 430, 432, 26 L. Ed. 1142, that "the rule is that, where a cause of action cognizable at law is entertained in equity on the ground of some equitable relief sought by the bill which turns out cannot, for defect of proof or other reason, be granted, the court is without jurisdiction to proceed further, and should dismiss the bill without prejudice." No relief was sought by the plaintiff with respect to the shares of the Box Elder Power & Light Company held by him.

The bill of the plaintiff will be dismissed without prejudice to an action at law on its notes and indebtedness, and the defendant the Toltec Ranch Company will have a decree for the reconveyance of its land.